## CITY OF CHICAGO v. PITTSBURGH S. S. CO.

(Circuit Court of Appeals, Seventh Circuit. August 4, 1926.)

No. 3635.

**1. Navigable waters ⬥�긆20(8).**

Evidence as to cost of repairs of vessel damaged by fall of lift bridge, and of lost profits during delay, *held* to sustain award of damages and demurrage.

**2. Navigable waters ⬥⟆20(8).**

Vessel damaged by fall of lift bridge *held* entitled to interest on amount of damage and demurrage recovered from date of filing libel, where all loss accrued theretofore.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Libel by the Pittsburgh Steamship Company against the City of Chicago. Judgment for libelant, and respondent appeals. Affirmed.

Frank T. Huening, of Chicago, Ill., for appellant.

George W. Cottrell, of Cleveland, Ohio, for appellee.

Before ALSCHULER, EVANS, and ANDERSON, Circuit Judges.

ALSCHULER, Circuit Judge. Appellee's steamer James Watt was struck and seriously damaged, while navigating the Chicago river, through appellant's North Halsted lift bridge falling upon it. Of appellant's liability there is no question. The issue of damages was referred to a special commissioner, who heard the evidence and made a report, awarding damages consisting of (a) cost of repairs, $14,266.38; (b) demurrage, $11,791.96; and (c) lawful interest thereon from date of filing libel, which the court confirmed, giving judgment accordingly.

[1] Respecting the cost of repairs it is contended that the evidence thereof was largely secondary and incompetent. We are well satisfied that the evidence is not properly subject to this objection. In the very nature of things it was impracticable to establish by strictly original evidence proof of each nail, rivet, and hammer blow that entered into this considerable job. Competent witnesses testified that the material and labor shown by the bills in evidence did in fact enter into the repairs and were necessary. And this is wholly uncontradicted, since no evidence whatever was offered on behalf of appellant. The commissioner heard the evidence, and we find nothing in the record that tends to suggest padding of bills, or mistakes or fraud therein. No reason appears for disturbing the finding in this respect, but, on the contrary, every reason to support it.

As to the demurrage, the uncontradicted evidence shows that the Watt had been chartered for the season to carry iron ore from Detroit to Chicago, and was carrying, not only her own capacity of from 6,200 to 6,500 tons, but also that of her tow, the Fritz, with capacity of 8,200 to 8,400 tons; that there was ore to be carried for herself and her tow for the season, and that she was so carrying ore practically all of the season up to about a week before this injury, during which week she was being repaired in the Chicago river, proceeding down the river from such repairs when the injury in question occurred, and being thereafter detained on account of the injury 32½ days, and then resuming her carrying of ore to her own capacity and that of her tow. It appears that, besides the freight received on her own tonnage, she was receiving for the tonnage of the Fritz as compensation for the tow 20 per cent. of her gross rate of 80 cents per ton.

The commissioner received evidence to show the actual freight receipts and expenses for 12 trips of the Watt and her tow, and from this calculated a net profit of the Watt per day for the days employed in making of such trips, and allowed for the demurrage at such daily rate for about 32½ days as the net profit lost to appellee by reason of the injury. It is apparent that such loss cannot be fixed with mathematical accuracy, and in each case must be ascertained in the best and most reliable manner of which the case is susceptible. From the evidence it is reasonably certain that, but for the injury, the Watt, during the days she was laid up on account thereof, would, with her tow, have been carrying ore as indicated, and have earned in freight charges substantially the net profits as found. If by reason of weather conditions, or markets, or supply and demand, the experience afforded by the 12 trips would not have held good during the time in question, it was open to appellant to show this. Its opportunity for learning the facts was scarcely less than that of ap-

pellee. It surely was aware of the extraordinary occurrence of its bridge falling upon the vessel inflicting considerable damage, and it was at once interested in the question of the extent of that damage. It could have kept itself informed, not only as to the nature of the repairs and the cost thereof, but also as to the conditions which bore upon the loss of profits it might thereafter be called upon to meet on account of demurrage. Its failure to present any evidence on the subject would tend to corroborate the truth of the evidence that such was the experience of the Watt as to its net profits, and that during the time in question it would have carried freight which would in all reasonable probability have brought it proportionate profit during the time lost.

It is suggested that during most of the time in question the Fritz was being towed by another steamer chartered for carrying ore for the same shipper, and therefore nothing should be allowed on account of the Fritz. It would seem that this fact only serves to confirm the claim that, but for the accident, the Watt would have continued towing the Fritz and receiving its profit therefor. Recovery is not on the basis of loss to the Fritz, but the loss to the Watt, which, as to the Fritz, was one-fourth of its gross freight charge for the tonnage carried. Regardless of the earnings of the Fritz while the Watt was disabled, it is apparent from the evidence that the loss to the Watt through its inability to tow the Fritz was the profit the evidence showed it would otherwise have received upon the tonnage of the Fritz.

[2] Respecting the contention that interest should not have been allowed, we can see no reason for withholding it. All of the loss to appellee on account of the injury fully accrued long before the beginning of the interest period as fixed, and the record suggests no circumstance which would indicate impropriety or abuse of discretion in the allowance of interest.

The judgment of the District Court is affirmed.